UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ALAN B. MCNICHOLS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL ONE BANK, N.A.; CAPITAL ONE SHOPPING HOLDINGS, LLC; and CAPITAL ONE FINANCIAL CORP.,<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Alan B. McNichols ("McNichols" or "Plaintiff"), on behalf of himself and all others similarly situated, by and through his counsel, brings this Class Action Complaint ("Complaint") against Defendants Capital One Bank, N.A. ("CONA"); Capital One Shopping Holdings, LLC ("COSH"); and Capital One Financial Corp. ("COFC") (collectively "Capital One" or "Defendants"), and based upon personal knowledge with respect to himself, and on information and belief and the investigation of counsel as to all other matters, in support thereof alleges as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this case on behalf of himself and all other participants in Defendants' "Capital One Offers" programs ("Capital One Offers Cardholders" or "the Cardholders").

2. Capital One has maintained a cash-back rewards program for its credit cardholders called "Capital One Offers" since at least 2022. Through Capital One's Offers program, holders of most Capital One credit cards, including the Quicksilver card, Savor card, Venture card, and

Walmart Rewards card, can purportedly receive cash-back and statement credit by shopping at designated retailers.

3. By using the shopping portal available to Capital One Offers Cardholders through in a web browser or mobile app, the Cardholders could browse offers from hundreds of online merchants across a wide variety of industries. Indeed, Capital One represented that the Cardholders could earn cashback and statement credit through purchases made through the Offers program at prominent and wide-ranging brands, which included Adidas, Macy's, lululemon, Walmart, Lowe's, The Home Depot, IHG, Dell Technologies, StubHub, Ulta, and Vrbo.

4. The specific amounts of cashback and statement credit that Cardholders would receive on their purchases from a given merchant (the "Offers") vary over time, and Capital One promotes these Offers to the Cardholders through a link provided in its website and/or mobile application. For all other purchases aside from those associated with the Offers promoted by Capital One, Cardholders received the standard amount of cashback or statement credit that would ordinarily be received from the credit card, which was ordinarily just 1% or 1.5%, if cashback or statement credit was offered at all.

5. Once the Cardholder made the purchase through the link provided by Capital One, Capital One represented to Cardholders that the cash or statement credit that had been promoted in the Offer (the "Payout") would be available "in about 45 days."

6. In reality, Capital One regularly failed to provide Cardholders with the Payout that they had been promised in the Offer after the Cardholders made purchases in reliance on the Offer. In one instance, Capital One did not provide the Payout it had promised to Plaintiff pursuant to Offers for cashback on purchases made through Zappos for 6% in December 2023 and for 3% in September 2025. Despite the fact that these purchases were made in reliance on Capital One's

promise to provide 6% and 3% cashback rather than the 1.5% that would be received on ordinary sales, Capital One failed to do so. On many other occasions, Plaintiff has claimed Offers only to have Capital One fail to timely issue the Payout. When Plaintiff has contacted Capital One to demand payment of such Payouts, Capital One has complied, indicating that Plaintiff has properly been claiming the corresponding Offers, but Capital One has simply not credited the Payouts as promised.

7. The Offers were promoted along with a link to "Shop Online," and incorporated an agreement that included a clause stating: "Subject to your compliance with these Terms, we will issue a payout to your Qualifying Account, according to the rate advertised in the Qualifying Offer and calculated in the manner outlined … above, following your Qualifying Offer Purchase[.]" Capital One's failure to issue the Payout as it was obligated to under the contract it had entered into with the Cardholders amounts to a breach of this contract, which the Cardholders are entitled to recoup under Virginia contract law.

8. In the alternative of an express breach contract, a covenant of good faith and fair dealing is implied into the account terms, and provides that Capital One must exercise its discretion honestly and in good faith. The agreement provides that Capital One "strive[s] to issue Account Payouts within 45 days" and "strive[s] to provide Account Payouts in connection with all Qualifying Offer Purchases that satisfy these Terms and the relevant Qualifying Offer Terms. If you believe that you should have received an Account Payout that you did not receive, you must contact us using the contact information connected to your Qualifying Account so that we can evaluate." Capital One breached the covenant of good faith and fair dealing by failing to adopt policies and procedures that would allow it to "strive to provide Account Payouts" within a reasonable period of time. Instead, as stated above, Capital One routinely failed to issue the

Payouts it had promised, without informing the Cardholders of its failure to do so or providing any explanation.

9. Plaintiff has held a Capital One Quicksilver credit card since about December 2013, and has accordingly been eligible to take part in the Offers Program since its inception by Capital One.

10. Capital One's conduct caused Cardholders to lose millions of dollars of Payouts as were promised under the Offers in the aggregate since Offers program's inception, benefiting Capital One at the expense of its customers.

11. Capital One was financially motivated to breach its obligations under Virginia contract law and to make materially false and misleading statements with respect to the Offers Program. Indeed, Capital One was able to report higher profits by underpaying Cardholders in the Payouts it had promised for the use of their cash. According to its Form 8-K filed with the U.S. Securities and Exchange Commission on March 11, 2024 Capital One reported that its rewards programs amounted to liabilities of $3.1 billion, $3.0 billion and $2.5 billion for the years ending December 31, 2023, 2022 and 2021, respectively. Capital One was able to reduce its expenses and increase its profit in part by depriving Cardholders from the Payouts it had promised, and was highly motivated to do so.

## THE PARTIES

12. Plaintiff is a natural person who is a citizen of the United States and who is domiciled in the State of Connecticut. Plaintiff has held a Capital One Credit Card starting on or around December 2013, and became a participant in Capital One Offers at the time of its inception. He is still a Capital One Offers Cardholder as of the filing of this Complaint.

13. Defendant Capital One Shopping Holdings, LLC is a Delaware limited liability company formed on November 21, 2013. Upon information and belief, Defendant Capital One Shopping Holdings, LLC has its principal place of business in McLean, Virginia and is a wholly-owned subsidiary of Capital One Financial Corporation.

14. Defendant Capital One Bank, N.A. is a national bank with its principal place of business McLean, Virginia.  Defendant Capital One, N.A. is a wholly-owned subsidiary of Capital One Financial Corporation.

15. Defendant Capital One Financial Corporation is holding company incorporated in the State of Delaware with its principal place of business in McLean, Virginia.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), because this action is a class action in which there are 100 or more Class members; the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs; and at least one Plaintiff and member of the Class is a citizen of a state different from Defendant.

17. This Court has personal jurisdiction over Defendants because Defendants are headquartered in this District and a substantial portion of the acts complained of took place in this District.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants are headquartered in this District and a substantial portion of the acts complained of took place in this District.

## FACTUAL ALLEGATIONS

### I. Background on Capital One Credit Cards and its Offers Program

19. Cashback and statement credit rates on purchases are often offered as benefits to make a given credit card more attractive to cardholders. The cashback rate is the percentage of the total purchase price that the Cardholder would receive in the form of cash to be deposited into the associated bank account or as credit to be used against future credit card statements, and is a benefit of that credit card providers market to make their cards more attractive to consumers.

20. Indeed, Capital One's website advertises its various credit card products, and included the "rewards" (e.g., the cashback rate offered) as one of the material terms that consumers would assess before applying for a credit card, along with the card product's annual fee, purchase rate, and transfer info.[1]

21. Most of Capital One's credit cards offers cashback of 1% or 1.5% on most or all purchases. For instance, the Quicksilver card offers 1.5% cashback on all purchases. The Savor card offers 1% as a default cashback rate on most purchases. For each of its credit cards, Capital One advertises the rewards as term for potential cardholders to compare before beginning the application process.

22. In addition to the cashback received on general purchases, holders of certain cards, including the Quicksilver card, Savor card, Venture card, and Walmart Rewards card, qualify for the Capital One Offers Program. Under the Offers Program, Cardholders can receive higher cashback for purchases from certain merchants, as promoted by Capital One through the

---

[1] https://www.capitalone.com/credit-cards/compare/ (last accessed October 20, 2025).

6

Cardholder's online account or mobile application.[2] The thousands of merchants that Capital One promoted through the Offers Program varied, and the promotions were for only for a limited time.

23. The cashback rates received by Cardholders through the Offers Program for purchases from the promoted merchants were significantly higher than the rate of 1% or 1.5% cashback for all other purchases made. Cashback rates promised to Cardholders on Capital One's website and the mobile application for purchases made through the Offers Program ranged from 2% to 40%, as shown below:[3]



---

[2] https://www.capitalone.com/learn-grow/money-management/capital-one-offers/ (last accessed October 20, 2025).

[3] https://capitaloneoffers.com/feed (last accessed October 20, 2025).

## II. The Capital One's Offers Program Purchase Process and Capital One's Failure to Issue the Promised Payouts

24. Capital One's website is operated jointly by Defendants. The "terms and conditions" on Capital One's webpages pertaining to online banking products "refer to Capital One and its affiliates and related entities as 'we,' 'us' and 'our.' This includes Capital One Financial Corporation, Capital One, N.A. and each of their successors, assigns, agents, and representatives."[4] COFC's 2022 Form 10-K, at 5, states: "We maintain a website at www.capitalone.com."

25. On its website or in its mobile application, Capital One provided the Capital One Offers Cardholders with a link to shop online on the promoted merchant's website, along with the advertised cashback rate.

26. Once a Cardholder selected the link to shop online, the Terms and Conditions of the Offer are linked next to a button to continue shopping on the merchant's website.[5]

27. In the Terms and Conditions, Capital One promised that the advertised cashback rate would be the rate that would be issued in the form of a Payout to Cardholders, and that "[s]ubject to your compliance with these Terms, we will issue a payout to your Qualifying Account, according to the rate advertised in the Qualifying Offer and calculated in the manner outlined … above, following your Qualifying Offer Purchase[.]"

28. Moreover, Capital One assured Cardholders that best efforts would be made to issue the Payouts within 45 days, and that delays would only be to ensure compliance with the Offer's terms: "We strive to issue Account Payouts within 45 days, but we reserve the right to delay

---

[4] https://www.capitalone.com/digital/terms-conditions/ (last modified Nov. 15, 2024).
[5] https://capitaloneoffers.com/Capital-One-Offers-Terms-and-Conditions.pdf (last accessed October 20, 2025).

8

issuance of Account Payouts to confirm the existence of a Qualifying Offer Purchase and to ensure compliance with these Terms and with the relevant Qualifying Offer Terms."

29. Despite the representations to Cardholders on its website and mobile application and promises made in its Terms and Conditions, Capital One routinely failed to issue Payouts as it had assured Cardholders it would pursuant to the represented cashback rates.

30. Illustratively, Capital One never provided the Payout it had promised pursuant to an Offer that Plaintiff properly claimed for cashback of 6% on a Zappos purchase made in December 2023. As a result of Capital One's failure to issue a Payout as it had promised, Plaintiff lost out on an effective 4.5% in cashback of the $212.65 purchase he made in reliance on the Offer, totaling $9.65.

31. In another instance, Capital One never provided the Payout it had promised pursuant to an Offer that Plaintiff properly claimed for cashback of 3% on a Zappos purchase made in September 2025. As a result of Capital One's failure to issue a Payout as it had promised, Plaintiff lost out on an effective 1.5% in cashback of the $249.87 purchase he made in reliance on the Offer, totaling $3.75.

32. On many other occasions, Plaintiff has claimed Offers only to have Capital One fail to timely issue the Payout. For example, Plaintiff recalls having to chase down Capital One by calling customer service in order to receive Payouts on claimed Offers for purchases of Sketchers, Bouqs, Burrow, and possibly others. When Plaintiff has contacted Capital One to demand payment of such Payouts, Capital One has complied, indicating that Plaintiff has properly been claiming the corresponding Offers, but Capital One has simply not credited the Payouts as promised.

### III. Cardholders React to Capital One's Misconduct

33. Online complaints abound from consumers regarding Capital One's failure to deliver Payouts in the Offers program.

34. In March 2025, a user of the Venturex subreddit, an online platform dedicated to the discussion of Capital One's consumer financial product Venturex, lamented about "how inconsistently the points come in." Further, the user stated that there were "purchases [the user] made a month ago and heard nothing on." In response, other posters responded to state that they were "in the same boat" and that the Offers Program was an "awful system." As one poster summarized with respect to the Payouts: "You might get it or you might not, but at least you gave it a shot!"[6]

35. Another post by a user of the Venturex subreddit titled "CapitalOneOffers is actually a SCAM[]" described in detailed the first experience of a cardholder who failed to receive the promised Payout, and characterized the program as a "scam." In response to the same inquiry, another user stated that "most egregious was a 7k Hilton booking that should have gotten 11 points per dollar but only got 3." Another user stated that they had "used it once to purchase two HP laptops. I was supposed to get 10% back but got nothing."[7]

36. The online complaints alleged above are merely illustrative and not an exhaustive recounting of the many online complaints against Capital One for the conduct alleged herein.

## CLASS ALLEGATIONS

37. This action is brought by Plaintiff, for himself and on behalf of all others similarly situated, as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3). Plaintiff seeks to represent a class of all persons who claimed Capital One Offers but has not received the

---

[6] https://www.reddit.com/r/Venturex/comments/1jpnwhx/capital_one_offers/ (last accessed October 20, 2025).
[7] https://www.reddit.com/r/Venturex/comments/1m8g744/capitaloneoffers_is_actually_a_scam/ (last accessed October 20, 2025).

corresponding Payout (the "Class"). Plaintiff also seeks to represent a subclass of all persons in Connecticut who claimed Capital One Offers but have not received the corresponding Payout (the "Connecticut Subclass").

38. Excluded from the Class are Capital One and any person, firm, trust, corporation, or other entity related to or affiliated with any of Capital One's partners, subsidiaries, affiliates or joint ventures.

39. The members of the Class are so numerous and dispersed that it would be impracticable to join them individually. At all relevant times, there were thousands of Offers Cardholders. The precise number of Class members and their identities are unknown to Plaintiff at this time but can be determined through discovery.

40. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to Class and/or Connecticut Subclass are:

    a. Whether Capital One failed to issue Payouts it had promised to Cardholders dishonestly, unfairly, and/or in bad faith;

    b. Whether Capital One breached the terms of its contract with Cardholders by failing to issue Payouts;

    c. Whether Capital One breached the covenant of good faith and fair dealing implied by law into its contracts with Cardholders;

    d. Whether Capital One's conduct violated the Connecticut Unfair Trade Practices and/or Virginia Consumer Protection Acts;

    e. Whether Capital One's conduct violates principles of quasi-contract and caused Capital One to be unjustly enriched;

    f.   Whether Capital One's wrongful conduct caused Plaintiff and the Class members damages;

    g.   The amount of damages suffered by Plaintiff and Class members;

    h.   The amount of restitution to which Plaintiff and Class members are entitled;

    i.   Whether Plaintiff and Connecticut Subclass members are entitled to treble and/or punitive damages;

    j.   Whether Plaintiff and Class members are entitled to a reasonable award of attorneys' fees, interest, and costs of suit.

41.    Plaintiff's claims are typical of the claims of the members of the Class he seeks to represent because they were all Offers Cardholders and subject to the same Offers program.

42.    Plaintiff will adequately represent and protect the interests of the Class and has no interests that conflict with or are antagonistic to the interests of Class members. Plaintiff has retained attorneys who are experienced and capable of prosecuting class actions and complex litigation. Plaintiff's attorneys will actively conduct and be responsible for prosecuting this litigation, and have adequate resources, experience, and commitment to litigate this matter.

43.    A class action is superior to any other method available for the fair and efficient adjudication of this controversy because it would be impractical and unduly burdensome for each of the individual Class members to bring a separate action. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the respective Class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. Moreover, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case

presents fewer management problems and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

44. Defendant has acted on grounds that apply generally to the Class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

45. Class certification is also appropriate because there is a readily identifiable class on whose behalf this action can be prosecuted. Class members are readily ascertainable from Capital One's records. A notice of pendency or resolution of this class action can be provided to Class members by direct mail, email, publication notice, or other similar means.

## CAUSES OF ACTION

## COUNT I

## BREACH OF CONTRACT

46. Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

47. Plaintiff brings this Count I, on behalf of himself and the Class, against Defendants Capital One, N.A. and Capital One Shopping Holdings, LLC.

48. The Terms and Conditions of the Capital One Offers Program provides that after customers claim Offers, Defendants "will issue a payout to your Qualifying Account, according to the rate advertised in the Qualifying Offer and calculated in the manner outlined in Section 4 above, following your Qualifying Offer Purchase."

49. Capital One's failure to issue Payouts at the rate advertised to Cardholders amounts to a breach of the contract.

50. Plaintiff and Class Members have performed all, or substantially all, of the obligations imposed on them under their contract with Defendant.

51. As described above, Defendant is required to fulfill its obligations under the terms of the Agreement but has failed to do so.

52. Defendant's breach damaged Plaintiff and members of the putative Class.

## COUNT II

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

53. Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

54. Plaintiff brings this Count II, on behalf of himself and the Class, against Defendants Capital One, N.A. and Capital One Shopping Holdings, LLC.

55. A covenant of good faith and fair dealing is implied by law in every contract. The covenant obligates the parties to a contract not to do anything which injures the right of the other to receive the benefits of the agreement.

56. Where a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing and the parties' legitimate expectations.

57. As alleged above, the Capital One Offers Terms and Conditions state that Defendants will "strive to issue Account Payouts within 45 days" and will "strive to provide Account Payouts in connection with all Qualifying Offer Purchases that satisfy these Terms and the relevant Qualifying Offer Terms."

58. Defendant breached the implied covenant of good faith and fair dealing by failing to adopt policies and procedures that would allow it to withhold the full issuance of the Payout to Cardholders. In doing so, Defendant deprived Plaintiffs of substantial cash that they had been promised in the Offer, contrary to legitimate expectations.

59. Defendant has unfairly interfered with the right of Plaintiffs to receive the benefits of their contracts with Defendant.

60. Plaintiffs have suffered substantial damages as a result of Defendant's breaches of the implied covenant of good faith and fair dealing.

## COUNT III

### BREACH OF QUASI-CONTRACT AND UNJUST ENRICHMENT

61. Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

62. Plaintiff brings this Count III, on behalf of himself and the Class, against all Defendants.

63. Plaintiff brings this claim in the alternative to the claim in Counts I and II, in the event the Court determines that Plaintiff (and member of the Class), on the one hand, and Defendant, on the other hand, were not subject to a contractual relationship with respect to the Offers Program.

64. Plaintiff and the Class conferred a benefit on Capital One by making purchases through the Offers Program on their Capital One credit cards as alleged herein. Defendant knowingly retained the full Payout to Cardholders and unjustly profited from the failing to issue all Payouts expected by Plaintiff and the Class.

65. In the absence of a contract, Plaintiff and the Class have no adequate remedy at law.

66. Defendant's unjust enrichment can be remedied by ordering Defendants to provide restitution, and to disgorge into a common fund or constructive trust, for the benefit of Plaintiff

and the Class, all proceeds received from Plaintiff and the Class as a result of the unlawful and/or inequitable conduct described herein.

## COUNT IV

### VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT, VA. CODE ANN. § 59.1-200

67. Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

68. Plaintiff brings this Count IV, on behalf of himself and the Class, against Defendants Capital One Shopping Holdings LLC and Capital One Financial Corp.

69. As described above, while engaging in trade or commerce within the Commonwealth of Virginia during the time period relevant hereto, Defendants Capital One Shopping Holdings LLC and Capital One Financial Corp. created and marketed Capital One Offers, and in doing so represented that purchases made through certain promoted merchants would receive higher cashback, while routinely failing to pay the represented cashback rate to Cardholders.

70. The aforesaid fraudulent acts and practices are unlawful and prohibited by the provisions of the Virginia Consumer Protection Act, Va. Code. Ann. § 59.1-200, including, but not limited to, the following:

   a. "Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits" (§ 59.1-200(A)(5));

   b. "Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model" (§ 59.1-200(A)(6));

16

    c. "Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised" (§ 59.1-200(A)(8));

    d. "Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction" (§ 59.1-200(A)(14)); and

    e. "Violating any provision of § 18.2-178," i.e., "obtain[ing] by any false pretense or token, from any person, with intent to defraud, money" (§ 59.1-200(A)(57)).

71. The Virginia Consumer Protection Act is "remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code. Ann. § 59.1-197. Application of the Virginia Consumer Protection Act to Defendants' conduct as alleged herein is proper because that conduct was committed by Defendants in Virginia and Defendants were unjustly enriched in Virginia.

72. The aforesaid acts damaged Plaintiff and members of the putative class.

### COUNT V

### VIOLATIONS OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT
### CONN. GEN. STAT. § 42-110a et seq.

### AGAINST ALL DEFENDANTS

### ON BEHALF OF THE CONNECTICUT SUBCLASS

73. Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

74. Plaintiff brings this Count V, on behalf of himself and the Connecticut Subclass, against all Defendants.

75. The Connecticut Unfair Trade Practices Act ("CUTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).

76. Defendants' conduct violates the CUTPA because it (1) offends public policy as it has been established by statutes, the common law, or otherwise; (2) is immoral, unethical, oppressive, or unscrupulous; and (3) causes substantial injury to consumers.

77. Plaintiff, on behalf of himself and the Connecticut Subclass, seeks damages, punitive damages, injunctive relief, other equitable relief, costs, and attorneys' fees as permitted by Conn. Gen. Stat. § 42-110g.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, requests that the Court award the following relief:

78. Certify this action as a class action, appoint Plaintiff as the Class representative, and designated the undersigned as Class Counsel;

79. Declare Defendants' conduct unlawful;

80. Enjoin Defendants from the unlawful conduct alleged herein, including by ordering Defendants CONA and COSH to immediately issue Payouts for all claimed Offers to all Class members;

81. Award Plaintiff and the Class damages under common law and/or by statute, including treble and/or punitive damages;

82. Award Plaintiff and the Class restitution and/or disgorgement;

83. Award Plaintiff attorney's fees, costs, and pre-judgment and post-judgment interest; and

84. Grant such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and the Class members demand a trial by jury on all triable issues.

Dated: January 16, 2026                     Respectfully submitted,

By: /s/ *Matthew B. Kaplan*

Matthew B. Kaplan (VSB #51027)
The Kaplan Law Firm
1100 N Glebe Rd, Suite 1010
Arlington, VA 22201
(703) 665-9529
Email: mbkaplan@thekaplanlawfirm.com

*Local Counsel for Plaintiffs and the Proposed Class*


Carl L. Stine (*pro hac vice* forthcoming)
Philip M. Black (*pro hac vice* forthcoming)
Samuel Coffin (*pro hac vice* forthcoming)
WOLF POPPER LLP
845 Third Ave.
New York, NY 10022
212-759-4600
cstine@wolfpopper.com
pblack@wolfpopper.com
scoffin@wolfpopper.com


*Attorneys for Plaintiff and the Proposed Class*