IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| ALAN B. MCNICHOLS, *individually and on behalf of all others similarly situated*, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:26-cv-000145 (AJT/WBP) |
| CAPITAL ONE BANK, N.A., *et al.*, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Dismiss, filed by Defendants Capital One Bank, N.A. ("CONA"), Capital One Shopping Holdings, LLC ("COS"), and Capital One Financial Corporation ("COFC")[1] (collectively, "Defendants"), [Doc. No. 37] (the "Motion"). The Court held a hearing on the Motion on June 3, 2026, following which it took it under advisement. Upon consideration of the Motion, the memoranda in support thereof, [Doc. Nos. 38, 48], and in opposition thereto, [Doc. No. 46], the argument at counsel at the hearing, and for the reasons stated below, the Motion is **DENIED** as to Plaintiff's Breach of Contract Claim (Count I), and **GRANTED** as to Plaintiff's Unjust Enrichment (Count II), Virginia Consumer Protection Act claim (Count III); and Connecticut Unfair Trade Practices Act claim (Count IV).

### I.   BACKGROUND

The Amended Complaint alleges the following facts:

---

[1] CONA and COS are wholly-owned subsidiaries of COFC. [Doc. No. 36] ¶¶ 14–16.

A. <u>Capital One Cash Back Rewards Program</u>

Since at least 2022, Capital One has maintained a cash-back rewards program, "Capital One Offers," for its credit cardholders to claim offers to receive cash back by shopping at designated retailers promoted by Capital One. [Doc. No. 36] ¶ 2. Capital One promotes these Offers directly to its cardholders through its shopping portal, where cardholders can browse offers from hundreds of online merchants. *Id.* ¶ 3.

The cashback rates received by cardholders through the Offers Program for purchases from the promoted merchants range from 2% to 4%, as shown below, and are significantly higher than the 1% or 1.5% cashback rates for all other purchases.



*Id.* ¶ 24.

As early as November 2023, Capital One promoted its cash back rewards program to prospective cardholders, stating that "[p]ayouts are automatically applied to eligible accounts

2

based on each merchant's offer rate." *Id.* ¶ 5. The promotional materials further included a section, reproduced below, under which Capital One provided additional details on "[h]ow to qualify" for payouts and "[h]ow payouts are included." *Id.* ¶ 26.

### What purchases qualify for a payout?

Depending on the offer, online and in-store purchases could qualify for Capital One Offers rewards. Here's a quick guide about some of the things you need to do to help ensure your purchases qualify.

|  | Online | In-store |
|---|---|---|
| How to qualify | • Make purchases on the merchant's website in the same browser session opened from Capital One Offers<br>• Complete purchases within 24 hours of opening the tile | • Activate the offer before purchase<br>• Pay with the same Capital One card used to activate the offer<br>• Purchase before the offer expires |
| How payouts are calculated | • Based on the offer and eligible purchase amount<br>• Excludes taxes, shipping, credits, fees or third-party add-ons | • Based on the total eligible purchase amount in the offer<br>• May include taxes, shipping or fees, depending on terms<br>• Some offers have a maximum payout cap |

*Id.* The promotional page further stated that it is "easy to earn rewards or statement credits at thousands of retailers[,]" and encouraged the public to seek pre-approval to obtain one of the qualifying cards, because doing so "gets you one step closer to exclusive deals from Capital One Offers." *Id.* ¶ 28.

    B.  <u>Terms and Conditions</u>

To utilize Capital One Offers program, users on the Capital One Offers portal are directed to a link to shop online on the promoted merchant's website to obtain the advertised cashback rate. *Id.* ¶ 30. That link also directs the user to the "Terms and Conditions of the Offer," which "govern" an "individual's participation in the Capital One® Offers Program." *Id.* ¶ 31 (citing Terms and

Conditions,[2] (hereinafter "T&C")). To activate a displayed merchant offer, cardholders are "presented with the operative Qualifying Offer Terms" and "the option to activate the Qualifying Offer and continue to the website of the relevant merchant." T&C § 4 (a)-(b); *see also id.* § 1 ("To be eligible, the customer must also comply with all terms connected to relevant individual offers ('Qualifying Offer Terms') . . ."). Qualifying Offer Terms may include "additional exclusions or promotional time periods," including, for example, that products from certain brands are ineligible for additional cash back through Capital One Offers, or that the advertised cash-back rate on Capital One Offers is valid only for a certain period of time. *See id.* § 1; [Doc. No. 38] at 3.

To be eligible for the payout on a qualifying offer, a cardholder must comply with the "additional conditions outlined in" the Terms and Conditions, including making the Qualifying Offer Purchase "on the Selected Merchant's website after first activating a Qualifying Offer while logged in to [their] Capital One account, and then being redirected to the Selected Merchant's website, within 24 hours of activating the Qualifying Offer and during the same open browser session." T&C § 4(b). Simply "using the Selected Merchant's website without being redirected to the Selected Merchant's website by a Program offer tile," or making a purchase "by phone," or "through a third-party site or service," does not result in a Qualifying Offer Purchase eligible for payout. *Id.* Additionally, use of an "ad blocker, VPN, cashback or promotional site, browser extension, or other service that could interfere with [Capital One's] ability to confirm [a customer's] purchase may result in [the customer] failing to make a Qualifying Offer Purchase." *Id.* Capital One "reserve[s] the right to determine whether a purchase constitutes a Qualifying Offer Purchase at [its] sole discretion." *Id.*

---

[2] *See* Terms and Conditions, https://capitaloneoffers.com/Capital-One-Offers-Terms-and-Conditions.pdf [https://perma.cc/C536-M4V4] (last visited June 18, 2026).

Following a "Qualifying Offer Purchase" that complies with the Terms and Conditions, including the operative Qualifying Offer Terms, Capital One "will issue a payout to [a cardholder's] Qualifying Account, according to the rate advertised in the Qualifying Offer. . . ." *Id.* ¶ 5(a). While Capital One "strive[s] to issue Account Payouts within 45 days," the Terms and Conditions "reserve the right to delay issuance of Account Payouts to confirm the existence of a Qualifying Offer Purchase and to ensure compliance with these Terms and with the relevant Qualifying Offer Terms," *id.* § 5(a), along with "the right to verify and adjust Account Payouts as needed." *Id.* § 5(b). The Terms and Conditions also advise customers that "[t]he timing of the Account Payout depends on the relevant Qualifying Offer Terms." *Id.* § 5(a). If Capital One is "unable to confirm [a] Qualifying Offer Purchase," payout may be "delay[ed] or prevent[ed]." *Id.* § 5(c).

Capital One invites customers to resolve any disputes by contacting Capital One. *Id.* § 6(d) ("We strive to provide Account Payouts in connection with all Qualifying Offer Purchases that satisfy these Terms and the relevant Qualifying Offer Terms. If you believe that you should have received an Account Payout that you did not receive, you must contact us using the contact information connected to your Qualifying Account so that we can evaluate.").

C. <u>Plaintiff's Claims</u>

The Complaint alleges that "Capital One has regularly failed to provide Cardholders with the Payout that they had been promised in the Offer after the Cardholders made purchases in reliance on the Offer." [Doc. No. 36] ¶ 7. Plaintiff alleges two instances in which Capital One failed to issue a payout to him, in December 2023 and September 2025. *Id.* ¶ 8. Both occurred after "Plaintiff was induced to make a purchase at Zappos after seeing" offers for 6% and 3% cash back on the Capital One Offers website. *Id.* ¶¶ 36–37. Plaintiff "would not have made [these]

purchase[s] if he did not see the Offer[s] and expect to receive a Payout." *Id.* As a result, Plaintiff alleges a loss of $9.65 on his December 2023 purchase at Zappos of $212.65, and a loss of $3.75 on his September 2025 purchase at Zappos of $249.87. *Id.*

Plaintiff alleges that Capital One has failed to issue timely payouts "[o]n many other occasions . . . on claimed Offers for purchases of Sketchers, Bouqs, Burrow, and possibly others." *Id.* ¶ 38. On some occasions, but not for the two Zappos purchases underlying this lawsuit, Plaintiff contacted Capital One directly about these payouts to demand payment, following which Capital One "immediately issued the Payout without further inquiry or explanation." *Id.* Plaintiff alleges that Capital One has "has never denied [him] a Payout following a complaint from him," which Plaintiff alleges is indicative that "Plaintiff has performed all obligations and complied with all terms in the Terms and Conditions." *Id.* Plaintiff alleges specific instances of other customers making similar complaints online about Capital One's alleged failure to deliver payouts in the Offers program. *Id.* ¶¶ 39–44.

Plaintiff brings claims on behalf of a putative nationwide class of "all persons who claimed Capital One Offers but have not received the corresponding Payout," and a subclass of "all persons in Connecticut who claimed Capital One Offers but have not received the corresponding Payout." *Id.* ¶ 45.

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must "accept[] all well-pled facts as true," but "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd.*

*v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *See Iqbal*, 556 U.S. at 678 (quotation marks omitted).

### III.    DISCUSSION

Plaintiff brings claims against COS and CONA on behalf of a putative nationwide class for breach of contract, including the implied covenant of good faith and fair dealing, (Count I); an alternative quasi-contract claim for unjust enrichment against all three Defendants (Count II); a claim under the Virginia Consumer Protection Act ("VCPA") against COS and COFC on behalf of the same putative nationwide class (Count III); and a claim against all three Defendants under the Connecticut Unfair Trade Practices Act ("CUTPA") on behalf of a putative state subclass (Count IV). Defendants move to dismiss all four counts.

A. <u>Count I: Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing</u>

1. <u>Breach of Express Contract Claim</u>

Defendants first argue that Plaintiff has not plausibly alleged a breach of an express contract because he "fails to allege what the Qualifying Offer Terms were for any specific purchase—much less that he complied with those terms," and as a result "has failed to allege that COS and CONA breached any obligation under the Terms and Conditions." [Doc. No. 38] at 9–11. Plaintiff, in opposition, contends that "he complied with all duties that the Terms and Conditions imposed on him," which is all that is needed for a breach of contract claim. [Doc. No. 46] at 6.

To state a breach-of-contract claim in Virginia, Plaintiff must allege "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v.*

*George*, 594 S.E.2d 610, 619 (Va. 2004). Rule 9(c) of the Federal Rules of Civil Procedure provides that in pleading the performance or occurrence of conditions precedent, "it suffices to allege generally that all conditions precedent have occurred or been performed." FED. R. CIV. P. 9(c).

Here, there is no dispute concerning elements one and three of Plaintiff's breach of contract claim, that is, that the Terms and Conditions constitute a "legally enforceable obligation of" Capital One, and that Plaintiff suffered an injury or damage. *See* [Doc. No. 38] at 18 ("Capital One agrees that the Terms and Conditions are valid and enforceable . . ."). The sole dispute is whether Capital One breached any obligation under the Terms and Conditions, which as discussed above turns on whether Plaintiff's Zappos purchases complied with the relevant Qualifying Offer Terms. *See* T&C § 4(b) ("All Qualifying Offer Purchases must comply with the Qualifying Offer Terms connected to the relevant offer."); *see also* T&C § 1 ("To be eligible, the customer must also comply with all terms connected to relevant individual offers ('Qualifying Offer Terms') . . .").

"In a contract dispute, plaintiffs are not required to expressly plead satisfaction of a condition precedent to allege a breach-of-contract claim." *United States v. Clark Constr. Grp., LLC*, 235 F.Supp.3d 745, 753 (D. Md. Aug. 15, 2016) (holding that "failure to satisfy a condition precedent is ordinarily considered an affirmative defense" that is inappropriate at motion to dismiss stage). Courts routinely refuse to set aside contractual claims at the Rule 12(b)(6) stage for failure to plead the completion of a plaintiff's "proper and legitimate duties and obligations under its contract." *Id.*; *Polykon Mfg. LLC v. Gea Process Eng'g Inc.*, No. 3:23CV751 (DJN), 2024 WL 4183310 (E.D. Va. Feb. 21, 2024) (holding that plaintiff "sufficiently [pled] satisfaction of the Contract's conditions precedent" after generally alleging that all conditions precedent had been performed, which included, *inter alia*, compliance with defendant's manuals).

Here, Plaintiff alleges that he "performed all, or substantially all, of the specifically delineated obligations imposed on [him] under the Terms and Conditions." [Doc. No. 36] ¶ 60. Plaintiff's general allegation of compliance with the Terms and Conditions, which the Court must accept as true, is sufficient to meet Rule 9(c)'s pleading standard and Plaintiff's motion to dismiss the breach of an express contract claim in Count I of the Amended Complaint for failure to plausibly allege compliance with the Qualifying Offer Terms, or the conditions precedent of the contract, is denied.

2.    Breach of Implied Covenant of Good Faith and Fair Dealing Claim

Defendants argue that Plaintiff's implied covenant claim in Count I fails for three reasons: (1) Defendants' alleged obligations are governed by the express provisions of the Terms and Conditions; (2) to the extent it is not duplicative, Plaintiff's implied covenant claim impermissibly seeks to add new obligations to the Terms and Conditions that contravene the express terms of the contract; and (3) Plaintiff has failed to plead any bad faith, unfair dealing, or dishonesty. [Doc. No. 38] at 13. None of these reasons warrant dismissal of this claim.

Under Virginia law, the implied covenant of good faith and fair dealing protects a party's right "to receive the benefits of the agreement." *Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, 3 F.4th 605, 611 (4th Cir. 2021) (quoting 23 Williston on Contracts § 63:22 (4th ed. 2021)). As this Court has recognized, "[i]n Virginia, every contract contains an implied covenant of good faith and fair dealing." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009). And while Plaintiff cannot recover on an implied covenant claim for Defendants' exercise of their explicit contractual rights, *Charles E. Brauer Co. v. NationsBank of Virginia, N.A.*, 466 S.E.2d 382, 386 (Va. 1996), Virginia law is clear that conduct committed to the discretion of either party can give rise to an implied covenant claim where there is evidence that such discretion was

9

performed in "bad faith." *See Va. Vermiculite, Ltd. v. W.R. Grace & Co.–Conn.*, 156 F.3d 535, 542 (4th Cir. 1998); *Stoney Glen, LLC v. S. Bank & Tr. Co.*, 944 F. Supp. 2d 460, 466 (E.D. Va. 2013), *clarified on denial of reconsideration*, No. 2:13CV8-HCM-LRL, 2013 WL 4539736 (E.D. Va. Aug. 27, 2013) ("[W]here a party has discretion in performance, that party cannot act arbitrarily or unfairly" under the implied covenant of good faith and fair dealing); *Enomoto*, 624 F. Supp. 2d 443 (E.D. Va. 2009) (implied covenant "claim is properly pled because Plaintiff does not seek redress through an implied covenant claim merely for Defendant's unfavorable exercise of its explicit contractual rights. Plaintiff alleges that Defendant's actions were not merely unfavorable, but actually dishonest"). To plead a claim for a breach of the implied covenant, a plaintiff must show "(1) the parties had a contractual relationship, and (2) the defendant breached the implied covenant." *Phillips v. Wells Fargo Bank, N.A.*, 2018 WL 659199, at *3 (E.D. Va. Feb. 1, 2018).

Here, the Terms and Conditions afford Capital One "sole discretion" to "determine whether a purchase constitutes a Qualifying Offer Purchase," T&C § 4(b), and implied discretion to "delay or prevent" payout when it is "unable to confirm" a qualifying offer purchase. *Id.* § 5(c). The discretion afforded to Capital One under the Terms and Conditions is separate and apart from its explicit contractual rights that are the subject of Plaintiff's express contract claim, discussed above. As other courts have recognized, Plaintiff can allege the requisite "bad faith" to support its implied covenant claim through evidence that Defendants acted "arbitrarily and unfairly." *See Va. Vermiculite, Ltd.*, 156 F.3d at 542; *Stoney Glen, LLC*, 944 F. Supp. 2d at 460 (upholding implied covenant claim where plaintiff alleged defendant's review of plaintiffs' financial statements and subsequent decision to terminate debt settlement agreement "was against usual and prudent banking practices"); *Enomoto*, 624 F. Supp. 2d at 451 (finding breach of implied covenant where

defendant "purposefully failed to inform [plaintiff] of the high likelihood" that the promised benefit would not be issued); *Marcus v. Dennis*, 2022 WL 1527524, at \*5 (E.D. Va. May 13, 2022) (finding breach of implied covenant when "'[Plaintiffs] remained in the dark' about the true cost of the items she purchased from vendors").

The Amended Complaint expressly alleges both a breach of the express terms of a contract and a breach of the implied covenant based on the "sole discretion" afforded to Capital One under the Terms and Conditions, which Capital One allegedly exercised without justification to routinely withhold the payouts even though Plaintiff allegedly complied with all material terms. [Doc. No. 36] ¶¶ 38, 57–61; s*ee also Mendenhall v. Hanesbrands, Inc.*, 856 F. Supp. 2d 717, 726 (M.D.N.C. 2012) ("Courts have equated the covenant of good faith and fair dealing with an obligation to exercise . . . discretion reasonably and with proper motive, . . . not . . . arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties."). Taken as true, these allegations are sufficient to plausibly allege that Defendants acted in "bad faith," as that term is construed under Virginia law, in exercising its discretion under the Terms and Conditions in violation of the implied covenant of good faith and fair dealing. Accordingly, Defendants' Motion to dismiss Count I of the Amended Complaint for breach of contract is denied.

B. Count II: Unjust Enrichment Claim

Defendants contend that Plaintiff's alternative claim for unjust enrichment should be dismissed because there is no dispute concerning the existence of an express contract. [Doc. No. 38] at 16–17. The Court agrees.

Under Virginia law, an unjust enrichment claim cannot coexist alongside a claim for breach of an express contract that covers the same subject matter. *See CGI Fed. Inc. v. FCi Fed, Inc.*, 814 S.E.2d 183, 190 (Va. 2018) ("The existence of an express contract covering the same subject

matter of the parties' dispute precludes a claim for unjust enrichment."); *Mongold v. Woods*, 677 S.E.2d 288, 292 (Va. 2009) ("[W]hen such an express contract exists, however, there is no need to imply one because the parties have already negotiated an agreement.").

Relying on this Court's opinion in *In re Cap. One Consumer Data Sec. Breach Litig.*, No. 1:19MD2915 (AJT/JFA), 2021 WL 9734404, at *2 (E.D. Va. May 7, 2021), Plaintiff contends that Rule 8(d) allows him to plead his claim for unjust enrichment in the alternative because there is a dispute about the scope of the contract, specifically "whether plaintiff's purchases were 'qualifying purchases' for which Capital One was required to issue a Payout." [Doc. No. 46] at 12. But that issue is squarely governed by the Terms and Conditions; and Plaintiff's position runs afoul the rule that an unjust enrichment claim cannot be premised on conduct that is governed by an express contract. *See, e.g.*, *In re Capital One 360 Sav. Account Interest Rate Litig.*, 779 F. Supp. 3d 666, 739-40 (E.D. Va. 2024) (dismissing unjust enrichment claim due to undisputed existence of express contract governing subject matter); *McPike v. Zero-Gravity Holdings*, Inc., 280 F. Supp. 3d 800, 810 (E.D. Va. 2017) (dismissing plaintiff's unjust enrichment claim, because "neither party . . . challenge[d] the validity and enforceability" of the contract at issue); *cf. In re Cap. One Consumer Data Sec. Breach Litig.*, 2021 WL 9734404, at *2 (allowing unjust enrichment to proceed alongside contract claim where parties disputed whether the privacy notice at the heart of the action was contractually enforceable, and whether it was part of Plaintiffs' express contract). For these reasons, Defendants' Motion to dismiss Plaintiff's claim for unjust enrichment (Count II) is granted.

C.  Count III: VCPA Claim

Defendants argue that Plaintiff's VCPA claim fails because it is duplicative of his contract claim, he does not plausibly allege any actionable misrepresentation or omission of material fact,

12

and his pleading suffers from multiple additional defects, including the failure to satisfy Rule 9(b)'s particularity requirement and failure to allege reliance. [Doc. No. 38] at 19–25.

The VCPA is "remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public." VA. CODE § 59.1-197. The VCPA makes it unlawful to use "deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." *Id.* § 59.1–200(A)(14). "To state a cause of action under the VCPA, a plaintiff must allege (1) fraud, (2) by the supplier, (3) in a consumer transaction." *Enomoto*, 624 F. Supp. 2d at 456. As a claim sounding in fraud, Federal Rule of Civil Procedure 9(b) requires plaintiffs to plead VCPA claims with particularity, including "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015). In addition, the VCPA requires a plaintiff to allege "a false representation, of material fact, made intentionally and knowingly, with intent to mislead, reliance by the party misled, and resulting damage." *Hamilton v. Boddie-Noell Enters., Inc.*, 88 F. Supp. 3d 588, 591 (W.D. Va. 2015).

Here, Plaintiff alleges a violation of the VCPA because Defendants "created and marketed Capital One offers, and in doing so represented that purchases made through certain promoted merchants would receive higher cash back, while routinely failing to pay the represented cash back rate to Cardholders." [Doc. No. 36] ¶ 71. The Amended Complaint further alleges that Defendants "promoted the Offers program broadly online to Cardholders and the public alike, and described the Offers in a detailed manner that implied at all times that Cardholders would receive the Payouts as advertised if they complied with the terms of the Offer." *Id.* ¶ 72.

Plaintiff's relied upon misrepresentation allegations consist of forward-looking representations, including that certain purchases "would receive higher cash back" and that

13

cardholders "would receive the Payouts as advertised," *id.* ¶¶ 71–72, and, as such, are not statements of existing fact, required for VCPA claims. *See Nigh v. Koons Buick Pontiac GMC, Inc.*, 143 F. Supp. 2d 535, 554 (E.D. Va. 2001) (a car dealer's statement that he "would pay off the trade-in" was inactionable because it "is not a false representation under Virginia law."); *Reitz v. CVY of Alexandria, LLC*, No. 1:23-CV-959 (RDA/LRV), 2025 WL 895204 (E.D. Va. Mar. 24, 2025) (no cognizable VCPA claim where "Plaintiff's claim is premised on the statement made (which concerns future events) not on the facts unknown to him at the time of the representation."). Nor do Plaintiff's conclusory allegations that Capital One "routinely" failed to pay the advertised rates and withheld payouts as a matter of course save this claim, [Doc. No. 36] ¶¶ 71–72, since these allegations do not amount to anything beyond a claim that Capital One breached its contractual promises. Plaintiff asks the Court to infer that these allegations amount to a misrepresentation of Defendants' "state of mind," which is a "present fact" for the purposes of a misrepresentation claim, [Doc. No. 46] at 16, but Plaintiff has not alleged any facts from which it can be reasonably inferred that Defendant made the above promises "intending not to perform." *See Colonial Ford Truck Sales, Inc. v. Schneider*, 325 S.E.2d 91, 94 (Va. 1985). Indeed, Plaintiff's own allegations undermine any inference of intentional misconduct by demonstrating that Capital One addressed Plaintiff's complaints and issued rewards without objection on the occasions when Plaintiff contacted customer service. *See* [Doc. No. 36] ¶ 38.

Similarly, Plaintiff contends that Defendants' statements concerning the rewards program were false or misleading because on their promotional webpage they "presented the promised payouts as essentially guaranteed," [Doc. No. 46] at 18, through statements that "[p]ayouts are automatically applied to eligible accounts." [Doc. No. 36] ¶¶ 5, 23–27. But that contention is unsupported when placed within the context those statements were made and viewed together with

14

Defendants' other statements on the promotional webpage, referenced in the Amended Complaint, *id.* ¶ 23 n.2, including that the payouts only apply to "qualifying online purchase[s]"; that payouts are "[b]ased on the offer and eligible purchase amount"; that "[d]epending on the offer, online and in-store purchases could qualify for Capital One Offers rewards"; that after "select[ing] an offer" an individual will be told "all about it," including "details about the merchant, purchase categories, offer rates, qualifications, and more." *See* All About Capital One Offers, https://www.capitalone.com/learn-grow/money-management/capital-one-offers/ [https://perma.cc/BC4J-958J] (last visited June 30, 2026). In sum, nothing in Defendants' representations "presented the promised payouts as essentially guaranteed." Nor can Plaintiff point to anything in Defendants' marketing materials that amount to an "actionable omission," particularly since Defendants had no independent duty to disclose anything further. *See Fleece v. HCA Va. Health Sys.*, 2020 WL 7265851, at *3 (E.D. Va. Dec. 10, 2020) ("[A] duty to disclose arises out of Virginia law under three circumstances: (a) the existence of a fiduciary duty; (b) the existence of an independent legal duty; or (c) the existence of a statutory duty.").

Plaintiff's misrepresentation claim also fails because, as Plaintiff acknowledges, he does not allege ever seeing the promotional materials before using Capital One Offers. *See* [Doc. No. 46] at 19 (Plaintiff conceding that he only "viewed specific offers on his online Capital One page and made purchases in reliance on those promotions"). "Virginia courts have consistently held that reliance is required to establish a VCPA claim." *Adardour v. Am. Settlements Inc.*, 2009 WL 1971458, at *3 (E.D. Va. July 2, 2009) (collecting cases); *see also Cooper v. GGGR Investments, LLC*, 334 B.R. 179, 189 (E.D. Va. 2005) ("[T]he VCPA's plain language as consistently construed by the courts[ ] requires that a [ ] VCPA claimant show that he relied on the alleged misrepresentations. . . [A plaintiff is thus] required to prove reliance on the alleged

15

misrepresentations to recover under the VCPA."); *Reitz,* 2025 WL 895204, at *3 (holding that plaintiff failed to allege detrimental reliance to support VCPA claim). Plaintiff argues that notwithstanding his not having viewed the marketing webpage, he has sufficiently alleged that he viewed specific offers on his online Capital One account page and made purchases in reliance on those promotions. [Doc. No. 46] at 19. But, again, the relied upon offers constitutes a promise to Plaintiff that he "would receive" cashback from these purchases and his claim based on those promises is nothing more than Defendants' "failure to fulfill [a] promise," which "is a claim sounding in contract, not in the VCPA." *Nigh*, 143 F. Supp. 2d at 554.[3]

For these reasons, the Court grants Defendants' Motion to Dismiss Plaintiff's VCPA claim (Count III).

D.  Count IV: CUTPA Claim

Defendants have also moved to dismiss the CUPTA claim on the grounds that the Plaintiff has failed to allege facts that make that claim plausible. The CUTPA bars "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. ANN. (2024) § 42-110b(a). A CUTPA violation requires the following elements: "(1) the defendant committed an unfair or deceptive act or practice; (2) the act complained of was performed in the conduct of trade or commerce; and (3) the prohibited act was the proximate cause of harm to the plaintiff." *Pellet v. Keller Williams Realty Corp.*, 172 A.3d 283, 298 (Conn. App. Ct. 2017). An act or practice is deceptive where: (1) a representation, omission or other practice is likely to mislead consumers; (2) consumers interpret the message reasonably under the

---

[3] Plaintiff also cannot rely on transactions not identified in the Complaint to support his VCPA claim since Rule 9(b) bars Plaintiff from establishing liability based on any other representation for which he has not alleged with particularity the circumstances constituting fraud or mistake. *See Myers v. Lee*, 2010 WL 2757115, at *6 (E.D. Va. July 12, 2010) ("[T]o survive the motion[] to dismiss the VCPA claims, [Plaintiff] must have alleged sufficient facts to allege the time, place, and content of the false representations, the person making the representations, and what was gained as a result of the misrepresentations.").

16

circumstances; and (3) the misleading representation, omission or practice is material, that is, likely to affect consumer decisions or conduct. *Caldor, Inc. v. Heslin*, 577 A.2d 1009, 1013 (Conn. 1990). Alternatively, an act or practice is considered "unfair" under CUTPA when: (1) "the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise"; (2) "whether it is immoral, unethical, oppressive, or unscrupulous"; or (3) "whether it causes substantial injury to consumers." *Kent Literary Club of Wesleyan Univ. at Middletown v. Wesleyan Univ.*, 257 A.3d 874, 899 (Conn. 2021).

Plaintiff appears to offer two theories to support his CUTPA claim. The first is that Capital One, in its promotional materials, made "deceptive representations regarding the nature of the Offers Program," including by concealing that cardholders would not receive the payouts. [Doc. No. 46] at 23. The second is that Capital One repeatedly breached its Terms and Conditions. Neither argument is persuasive. *Id.* at 24.

As to Plaintiff's first theory, "that Capital One made materially misleading representations to Cardholders on the mobile app and on the website," *id.* at 23, Plaintiff's CUTPA claim suffers from same defects as his VCPA claim, namely, that Plaintiff has failed to allege that Defendant made "a representation [or] omission . . . likely to mislead consumers," *Smith v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 91, 101 (D. Conn.), *aff'd*, 666 F. App'x 84 (2d Cir. 2016) ("[T]he court may decide [whether a misrepresentation has occurred under CUTPA] as a matter of law if it is clear that no reasonable person would be deceived by defendant's conduct."), or that Plaintiff relied on any such representation such that it caused substantial injury. *See Id.* ("[A] court may determine as a matter of law whether the plaintiff has pleaded reliance on the alleged misrepresentation."); *In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82, 120 (D. Conn. 2014), *aff'd sub nom. Williams v.*

17

*Affinion Grp., LLC*, 889 F.3d 116 (2d Cir. 2018) (holding that negative billing practice, which was disclosed in fine print, "is not in and of itself an unfair practice"). Nor does the Amended Complaint plausibly allege that Capital One engaged in an "unfair practice" since Capital One's alleged promotional materials, as discussed above, do not guarantee payouts and there is nothing alleged in those materials that are offensive to public policy, immoral or unethical, or caused Plaintiff any substantial injury. *See Smith*, 158 F. Supp. 3d at 100–01 (holding that Wells Fargo's promise of "no closing costs or hidden fees" was not actionable as an "unfair practice" under CUTPA where allegedly hidden fees were listed elsewhere in document disclosed to Plaintiff).

Plaintiff's second argument, that Capital One repeatedly breached the Terms and Conditions, likewise does not plausibly allege a CUTPA claim. "[C]ontract breaches do not constitute unfair trade practices," and CUTPA "prohibits only certain particularly abusive commercial practices." *Richards v. Direct Energy Servs., LLC*, 915 F.3d 88, 102 (2d Cir. 2019). Where, as here, Plaintiff "incorporate[s] the same allegations used to state breach of contract claims," he must "plausibly allege that the breach is accompanied by aggravating circumstances." *Ultimate Nutrition, Inc. v. Leprino Foods Co.*, 747 F. Supp. 3d 371, 385 (D. Conn. 2024); *Richards*, 915 F.3d at 102 ("[A] simple contract breach is not sufficient to establish a violation of CUTPA, particularly where the count alleging CUTPA simply incorporates by reference the breach of contract claim."). Plaintiff's conclusory allegation that Defendants breached the Terms and Conditions on "multiple" occasions does not meet this standard, [Doc. No. 46] at 24.[4] And any contention that Capital One's conduct was against public policy or "immoral, unethical,

---

[4] The Amended Complaint only alleges two specific breaches, unlike in *Greene v. Orsini*, which Plaintiff relies on, where the sellers of a business (i) breached a "noncompetition agreement on several occasions despite the plaintiffs' repeated complaints," (ii) expressly promised the buyers, after being put on notice, that they would stop selling to a competitor, then (iii) "less than a month later" sold to that very competitor again. 926 A.2d 708, 709–12 (Conn. Super. Ct. 2007).

18

oppressive, or unscrupulous" is again belied by Plaintiff's admission that "[o]n many other occasions," Capital One "issued the Payout without further inquiry or explanation" upon Plaintiff's request. [Doc. No. 36] ¶ 38. Plaintiff has therefore failed to plausibly allege that Defendants' alleged breach of contract was accompanied by "aggravating factors."

For these reasons, Defendant's Motion to dismiss Plaintiff's CUTPA claim (Count IV) of the Amended Complaint is granted.

### E. Punitive or Consequential Damages

Finally, Defendants argue that Plaintiff's request for punitive and consequential damages is foreclosed under the Terms and Conditions, which provide that "under no circumstances will Capital One be liable" for any "consequential, exemplary, punitive or special damages . . . whether in contract or in tort . . . resulting from or in any way related to this Program." T&C § 6(f). Having dismissed Plaintiff's statutory claims, Plaintiff's claims for punitive and consequential damages based on those statutory claims will be dismissed as well. *See Kamlar Corp. v. Haley*, 299 S.E.2d 514, 518 (1983) (punitive damages are not recoverable for any breach of contract, "regardless of the motives underlying the breach," without "proof of an independent, willful tort, beyond the mere breach of a duty imposed by contract").

19

## IV.    CONCLUSION

For the above reasons, it is hereby

**ORDERED** that the Motion be, and the same hereby is, **DENIED** as to Plaintiff's Breach of Contract Claim (Count I) and **GRANTED** as to Plaintiff's Unjust Enrichment claim (Count II), Virginia Consumer Protection Act claim (Count III); and Connecticut Unfair Trade Practices Act claim (Count IV).

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to all counsel of record.

July 2, 2026
Alexandria, Virginia

Anthony J. Trenga
United States District Judge